**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**DENVER DIVISION**

| | | |
|---|---|---|
| **EDWARD NELLSON**, individually, and a **CLASS** of similarly-situated persons, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No.: |
| **WARDEN J. BARNHART, in his Individual and official capacity** | ) ) ) | |
| **And** | ) ) | |
| **UNITED STATES FEDERAL BUREAU OF PRISONS**, | ) ) ) | **JURY DEMANDED** |
| Defendants. | ) | |

<u>**COMPLAINT FOR DECLARATIVE AND INJUNCTIVE RELIEF**</u>
<u>**REGARDING EDWARD NELLSON AS AN INDIVIDUAL AND ALL**</u>
<u>**SIMILARLY SITUATED PERSONS AS A CLASS**</u>

Plaintiff, Edward Nellson, files this Complaint on behalf of himself, and as a representative of all similarly situated members of a class, against the United States Bureau of Prisons ("BOP"), and Warden Barnhart in his individual and official capacity, using 28 U.S.C. §§ 1343(a)(4), 2201, 2202, and Fed. R. Civ. P. 65, to vindicate their rights to be free from cruel and unusual punishment under the Eighth Amendment and other applicable Constitutional provisions.

## INTRODUCTION

The people of this country face a critical threat from the novel coronavirus COVID-19. This virus has been declared a pandemic by the World Health Organization.  https://www.who.int/emergencies/diseases/novel-coronavirus-2019/events-as-they-happen (last accessed March 15, 2020). This virus is spread person to person, with the CDC recommending the disbandment of all mass gatherings, social distancing is key to avoiding the spread of this illness. https://health.clevelandclinic.org/covid-19-understanding-quarantine-isolation-and-social-distancing-in-a-pandemic/ (last accessed March 15, 2020). Unfortunately, for people in prison, social distancing is not possible. Further, medical care and testing is entirely in the hands of Defendant Federal Bureau of Prisons, which literally holds prisoners' lives in their hands.

Testing and isolation are the key to preventing the spread of COVID-19 in prison. However, despite this fact and despite the fact that prisons are a *known* hotbed for infections and viral pandemics, Defendants have yet to implement a systemic testing protocol for prisoners and staff. This is outrageous and a dereliction of duty towards some of the most vulnerable people in our society. By failing to test prisoners and staff, Defendants are **knowingly** risking the lives of every prisoner in the BOP, including USP Florence.

## JURISDICTION AND VENUE

### 1.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343(a)(4). This Court has jurisdiction to issue the declaratory relief requested pursuant to the Declaratory Relief Act, 28 U.S.C. §§ 2201 and 2202. This Court may also grant injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure. This Court has authority to award costs and attorneys' fees under 42 U.S.C. § 1988.

### 2.

Venue is proper under 28 U.S.C. § 1391(b) and L.R. 3.1(B)(3) because (1) a substantial part of the events and omissions giving rise to Plaintiff's claims occurred within this District and Division; (2) Defendants reside and transact business in this District and Division; and (3) Defendants transact business throughout the country, therefore any judicial district where Defendant is subject to personal jurisdiction with respect to this action is appropriate.

## PARTIES

### 3.

At all times relevant to this Complaint, **Plaintiff Edward Nellson** was a citizen of the United States and is currently incarcerated in Colorado. Nellson is currently an prisoner in the BOP. At all times relevant to this Complaint, Nellson

had clearly established legal rights under state and federal law and the United States Constitution. Nellson submits himself to the jurisdiction and venue of this Court and is entitled to bring this action under state and federal law for all general, special, and any other permissible damages as well as for Declaratory and Injunctive relief.

4.

**Defendant United States Federal Bureau of Prisons** ("BOP") is a federal agency organized and existing under federal laws and has been so for a period preceding six months prior to the filing of this case. Also, at the time of the subject event that has given rise to this lawsuit, BOP was responsible for the care and protection of all individuals remanded by the Courts into the custody of the BOP. BOP has developed, promoted, and instituted a practice and policy of responding to the spread of the deadly coronavirus pandemic without testing and isolating individual prisoners for the virus.

5.

**Defendant Warden J. Barnhart** is the Warden at USP Florence. Defendant Barnhart is responsible for the implementation or non-implementation of any practice and procedure with respect to screening, testing, and addressing COVID-

19 in USP Florence, CO. Defendant Barnhart has ultimate authority within USP Florence.

6.

*The Defendants have adopted and continue to implement and enforce — by affirmative act or omission — a policy that leaves Plaintiff and all similarly situated individuals exposed to infection from an incredibly deadly virus running pandemic through this country.* Nellson is using the U.S. Constitution, federal statutes, 28 U.S.C. §§ 1343(a)(4), 2201, 2202, and Fed. R. Civ. P. 65, and other applicable federal laws, as the vehicle to sue the BOP regarding his federal claims.

7.

Defendants' practice and policy ensures that the prisoners within BOP, including USP Florence, are continually exposed to a multitude of other prisoners, in close proximity, without adequate testing to ensure that prisoners with the virus are removed from that population.

**STATEMENT OF FACTS**

**A.   COVID-19 is identified in Wuhan, China, and begins its spread**

8.

China reported an outbreak of a flu-like illness in the city of Wuhan, in the Hubei province, to the World Health Organization on December 31, 2019.

https://www.pharmaceutical-technology.com/news/coronavirus-a-timeline-of-how-the-deadly-outbreak-evolved/ (last accessed on March 15, 2020). This new coronavirus is labelled COVID-19. Id.

9.

Within 11 days the first death was reported in China. Id. The disease was confirmed to have spread to Thailand two days later, on January 13, 2020, and Japan two days after that, on January 15, 2020. Id. South Korea and the United States report their first cases of the virus within the next week. Id.

10.

In response to this international spread, the World Health Organization ("WHO") declared a health emergency on January 22, 2020. Id.

11.

Over the next week Singapore, Nepal, France, Mexico, Sri Lanka, Germany, the United Arab Emirates, Australia, and Taiwan all report cases of the COVID-19 virus. Id. Additionally, by January 29, 2020, the first cases of community spread of COVID-19, that is spread within a country to individuals who had not visited Wuhan, China, or come into contact with someone who had, were reported in Japan, Taiwan, and Germany. Id.

12.

On January 30, 2020, the United States reported its first case of domestic spread of the Coronavirus. Id. The next day, with the death toll confirmed at 213, the WHO declared COVID-19 a global health emergency. Id.

13.

By February 12, 2020, the death toll from COVID-19 has passed 1,100 and the Mobile World Congress was cancelled over fears of the virus. Id. By the next day, the death toll had risen by 254, to 1,369. Id.

14.

On February 27,2020, with the death toll from COVID-19 topping 2,800 and having spread to a dozen other countries, the United States detected the first suspected community spread case within the U.S.

15.

On March 11, 2020, the WHO declared COVID-19 a pandemic. Id. At this time, the death toll has passed 5,800. Id. COVID-19 has spread to 126 countries and Vatican City. https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/world-map.html (last accessed March 15, 2020).

**B.  COVID-19 spreads throughout the United States**

16.

Having confirmed the first case of COVID-19 in the United States on January 21, 2020, the virus has spread to 46 states and the District of Columbia, according to the Centers for Disease Control ("CDC"). https://www.cdc.gov/coronavirus/2019-ncov/cases-in-us.html (last accessed on March 15, 2020). An employee of the New York Department of Corrections and an employee of the Washington Department of Corrections have tested positive for COVID-19 on March 15, 2020, and March 12, 2020, respectively.

17.

As of March 13, 2020, the U.S. had reported 1,629 cases of COVID-19 and 41 deaths. Id. Those numbers are rapidly increasing. By March 15, 2020, according to other sources, COVID had reached over 3,000 cases and 57 deaths. https://www.livescience.com/coronavirus-updates-united-states.html (last accessed March 15, 2020).

18.

Nursing homes nationwide, where people live in close quarters daily, have limited visitors and begun testing of residents and workers.

https://www.washingtonpost.com/nation/2020/03/12/coronavirus-seattle-

nursing-homes/ (last accessed March 15, 2020).

19.

The President declared the COVID-19 spread within the United States a

national emergency on March 13, 2020. https://www.whitehouse.gov/

presidential-actions/proclamation-declaring-national-emergency-concerning-

novel-coronavirus-disease-covid-19-outbreak/ (last accessed March 15, 2020).

This proclamation noted that COVID-19 threatens to strain the U.S. hospital and

medical resources. Id.

**C. How COVID-19 is spread, its effects and its deadliness**

20.

COVID-19 is mainly spread person to person, both by being in close contact

and from respiratory droplets spread through coughing and sneezing.

https://www.cdc.gov/coronavirus/2019-ncov/prepare/transmission.html (last

accessed on March 15, 2020).

21.

COVID-19 is, however, transmissible by contact with contaminated surfaces

as well as by persons who do not show symptoms. Id.

22.

While COVID-19 spread is slower than that of influenza, its reproductive number, that is the number of people infected per infected person, is between 2 and 2.5, higher than that of the flu. https://www.who.int/docs/default-source/coronaviruse/situation-reports/20200306-sitrep-46-covid-19.pdf?sfvrsn=96b04adf_2 (last accessed on March 15, 2020).

23.

One major difference between COVID-19 and influenza is that, while there are some people who can spread the virus 24-48 hours prior to symptom onset, pre-symptom spread is not a primary driver of transmission for COVID-19. Id.

24.

The main symptoms of COVID-19 are fever, cough, and shortness of breath. Id. It can, however, lead to pneumonia, cytokine storm, and multi organ failure leading to death. https://www.aljazeera.com/news/2020/02/infected-coronavirus-200210205212755.html (last accessed March 15, 2020).

25.

15% of those infected with COVID-19 develop a severe infection, requiring hospitalization and oxygen treatment. https://www.who.int/docs/default-

source/coronaviruse/situation-reports/20200306-sitrep-46-covid-

19.pdf?sfvrsn=96b04adf_2 (last accessed on March 15, 2020).

26.

5% of individuals infected with COVID-19 develop critical infections,

requiring ventilation in a hospital. Id.

27.

3-4% of COVID-19 patients dies as a result of the infection, which at this

time is a rate well in excess of the flu, which has a mortality rate well below 0.1%.

Id.

**D. Testing is critical for containment of COVID-19**

28.

With the heightened infectivity of COVID-19, social distancing, that is

keeping a distance from infected individuals, and medical isolation are critical to

prevent the spread of the virus. https://www.cdc.gov/coronavirus/2019-ncov/

cases-updates/summary.html (last accessed March 15, 2020).

29.

Social distancing is not available for prisoners in BOP prisons, including

USP Florence. BOP prisons currently house 175,483 per the BOP.

https://www.bop.gov/mobile/about/ population_statistics.jsp (last accessed

March 15, 2020). This leaves prisoners like Nellson packed into close quarters, housed with other prisoners, with multiple cells in a single pod, sharing meals multiple times per day.

30.

BOP prisoners, including those as USP Florence, including Plaintiff Nellson, and putative class members, take meals in a communal chow hall, utilize communal showers, have cells with open toilets in them, and have communal recreation areas.

31.

Without the ability to isolate and engage in social distancing, isolation of prisoners who have COVID-19 from this population prior to passing the infection is critical to controlling the spread of this illness.

32.

Isolating all prisoners with the symptoms of COVID-19, fever, cough, or shortness of breath, and testing for the virus is the only effective means to prevent the spread of COVID-19 in this captive population.

**E.  COVID-19 arrives in Colorado.**

33.

On March 10, 2020, Colorado had 33 cases of COVID. https://www.nbc11news.com/content/news/15-total-cases-of-COVID-19-in-Colorado-one-confirmed-case-in-Gunnison-County--568667371.html (last accessed March 15, 2020).

34.

On March 14, 2020, Colorado Gov. Jared Polis issued the extraordinary executive order requiring all Colorado ski resorts to close.

35.

As of March 15, 2020, there were 131 presumptive positive cases of COVID in Colorado and one confirmed death. https://www.kktv.com/content/news/BREAKING--568535251.html.

36.

As of March 15, 2020, Colorado had identified COVID-19 cases in seventeen counties, including Denver County and Arapahoe County, both highly populated counties. Colorado has also identified one COVID-19 case in Pueblo County, a county near USP Florence and other BOP prisons.

37.

On March 16, 2020, the Colorado Governor's Office <u>ordered</u> the closure of all bars, restaurants, theaters, and casinos statewide, for anything other than takeout or delivery. https://drive.google.com/file/d/1pXAFPXCTLqBZvTJpuqrH45YeLB_Jc2wP/view (last accessed March 17, 2020). Even when people come to take out food, they are only allowed to be on premises five at a time. <u>Id.</u>

38.

As stated above, USP Florence prisoners eat <u>together</u> and continue to serve each other food, with no testing or monitoring for symptoms. Further, USP Florence prisoners cannot be "five at a time" in their various living arrangements. Unable to take the precautionary measures, USP Florence prisoners are sitting ducks in this pandemic, at the mercy of Defendants' inaction.

39.

Upon information and belief, the number of COVID-19 infections is expected to grow exponentially over the next days and weeks, if not months.

**F.  The CDC and subject-matter experts recognize the risk of the spread of disease, like influenza, within its institutions.**

40.

Even with the flu, the CDC had recommended "Rapid Detection of Cases" to be done via testing of people with influenza-like illnesses to determine what viruses were circulating at the institution. https://www.cdc.gov/h1n1flu/ guidance/correctional_facilities.htm (last accessed March 15, 2020).

41.

Prisoner populations are sicker than the general population. A 2018 study in The Lancet that incarcerated individuals have a higher burden of infectious illnesses such as HIV, hepatitis B and C, syphilis and tuberculosis than non-incarcerated individuals. https://www.thelancet.com/journals/lancet/article/ PIIS0140-6736(18)31251-0/fulltext (last accessed March 15, 2020).

42.

Further, incarcerated populations have chronic, noninfectious diseases such as COPD, heart failure and kidney disease which also increase the risk for infections such as coronavirus. Id.

43.

There are also clear indications that mortality is higher among the senior population. <u>See</u> <u>e.g.</u> https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(20)30566-3/fulltext#seccestitle150 (last accessed March 15, 2020).

44.

6% of the BOP population is aged 60 and above while 19.5% of the BOP prisoner population is aged 51 and above.

https://www.bop.gov/about/statistics/ statistics_prisoner_age.jsp (last accessed March 15, 2020).

**G. The BOP's COVID-19 Response is inadequate**

45.

The BOP, incusing USP Florence, has made a minimal response to the COVID-19 pandemic. The BOP has suspended social visits, prisoner movement, and legal visits. https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed March 15, 2020.

46.

Upon information and belief, neither BOP nor USP Florence have ordered COVID-19 testing kits. https://abcnews.go.com/US/state-prisons-prepare-coronavirus-federal-prisons-providing-significant/story?id=69433690 (last accessed March 15, 2020).

47.

There is **no** screening or testing of current prisoners in either USP Florence or BOP custody for COVID-19. Id.

48.

Neither BOP or USP Florence are making any effort to screen or test corrections officers, staff, or other individuals who work within these facilities for COVID-19. Id.

49.

Further, upon information and belief, USP Florence prisoners assigned to kitchen and other sanitary-related duties are continuing to perform those duties. They are doing this with **no screening** and **no testing** to ensure they are not carriers.

50.

Without such screening, the Defendant is knowingly leaving Nellson and all similarly situated prisoners in USP Florence exposed to the spread of a deadly virus that has created a pandemic across the globe.

51.

Further, upon information and belief, certain BOP facilities have no hand sanitizer and no soap for hand washing.

https://www.motherjones.com/politics/2020/03/the-coronavirus-is-spreading-and-reportedly-theres-no-soap-at-this-federal-jail-in-brooklyn/ (last accessed March 15, 2020).

### H. Class Action Allegations

52.

Plaintiff brings this suit as a class action on behalf of himself and all others similarly situated (the "Class") pursuant to Rules 23(a), 23(b)(1), and 23(b)(2).

53.

Plaintiff seeks to represent the following Class on claims for declaratory and injunctive relief: **All current and future prisoners in the custody of USP Florence and the BOP during the course of the COVID-19 pandemic.**

54.

Plaintiff reserves the right to amend the class definition if further investigation and discovery demonstrates that the class definition should be narrowed, expanded, or otherwise modified. Excluded from the Class are all non-human persons/entities, Defendants, and Defendants' attorneys. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

55.

As a result of Defendants' pattern, practice, and policy of failing to screen prisoners in the custody of BOP, test prisoners who exhibit symptoms of COVID-19, and then isolate prisoners who test positive for COVID-19, the BOP is doing nothing to actually identify and prevent the spread of the COVID-19 virus. As a result, members of the Class are or will be deprived of their constitutional rights to be free of cruel and unusual punishment under the Eighth Amendment. Therefore, Plaintiff and putative Class members seek declaratory and injunctive relief to remedy Defendant BOP's illegal and unconstitutional actions, policies, and practices.

56.

As a result of Defendants' pattern, practice, and policy of failing to screen staff for symptoms, test staff members who exhibit COVID-19 symptoms, and exclude staff members in contact with prisoners in the custody of the BOP who test positive for COVID-19, Defendants doing nothing to actually identify and prevent the spread of the COVID-19 virus. As a result, members of the Class are or will be deprived of their constitutional rights to be free of cruel and unusual punishment under the Eighth Amendment. Therefore, Plaintiff and putative Class members seek declaratory and injunctive relief to remedy Defendants' illegal and unconstitutional actions, policies, and practices.

57.

The requirements of **Rule 23(a), 23(b)(1)**, and **23(b)(2)** are satisfied by this class action.

1. **Rule 23(a)**

   i. **Numerosity**

58.

The information as to the exact and present size of the Class and the identity of the persons in the Class is in the control of the BOP. On information and belief, the Class presently encompasses approximately 175,483. This number is based on the BOP's count of prisoners, available as of March 15, 2020. The number of persons who are members of the Class described above are so numerous that joinder of all members in one action is impracticable.

   ii. **Commonality**

59.

Questions of law and fact common to the entire Class predominate over individual questions because the actions of Defendant BOP complained of herein—with respect to Cruel and Unusual Punishment—were generally applicable to the entire class. The common answers that Plaintiffs seek are simple

and will result in a common resolution for the class. These legal and factual questions include, but are not limited to:

    a. Whether the BOP, including USP Florence, has implemented and condoned a medical response to the COVID-19 pandemic that demonstrates deliberate indifference to the medical needs of the class members in failing to provide for the isolation of prisoners that show symptoms of the COVID-19 virus;

    b. Whether the BOP, including USP Florence, has implemented and condoned a medical response to the COVID-19 pandemic that inflicts cruel and unusual punishment as proscribed by the Eighth Amendment to the Constitution in failing to isolate prisoners that demonstrate symptoms of COVID-19 virus;

    c. Whether the BOP, including USP Florence, has implemented and condoned a medical response to the COVID-19 pandemic that demonstrates deliberate indifference to the medical needs of the class members in failing to provide for the systematic testing of prisoners that show symptoms of the COVID-19 virus for that virus; and,

    d. Whether the BOP, including USP Florence, has implemented and condoned a medical response to the COVID-19 pandemic that

demonstrates inflicts cruel and unusual punishment as proscribed by the Eighth Amendment to the Constitution in failing to systematically test prisoners that demonstrate symptoms of COVID-19 virus for that virus.

### iii.   Typicality

60.

Plaintiff's claims are typical of the members of the Class because Plaintiff and all Class members were injured by the same policy and medical response to the COVID-19 pandemic as described in this Complaint: each exposed to suffering or death by the pandemic spread of COVID-19 from untested, un-isolated, prisoners showing symptoms of COVID-19. Plaintiff's claim against the Defendants with regard to Eighth Amendment arises from the same practices and course of conduct that gives rise to the Eighth Amendment claim against Defendants of the Class members and is based on the same legal theories.

### iv.   Adequacy

61.

Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has no interests that are contrary to or in conflict with those of the Class he seeks to represent.

62.

Plaintiff has retained competent counsel in both civil rights and class action litigation and will provide affidavits in support of this in his motion for class certification.

**2. Rule 23(b)(1)**

63.

In this case, prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members and would establish incompatible standards of conduct for the party opposing the class. Here, if any other potential class member filed a lawsuit in this Court or in State Court seeking to declare the Defendants medical response plan to the COVID-19 virus this could create the risk of inconsistent or varying adjudications between or within these courts. In addition, if any other potential class member filed a lawsuit in this Court or in State Court seeking to enjoin Defendants COVID-19 response plan, the Defendant could be in the bizarre and untenable position of being unable to comply with one court order without simultaneously violating another court order. Therefore, certification of the Class under Rule 23(b)(1) is proper.

**3. Rule 23(b)(2)**

64.

Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper. Based on the practice and policy of failing to:

- screen BOP prisoners and staff members, including prisoners and staff members of USP Florence, for symptoms of COVID-19, including fever, every day or at least every other day;

- test all prisoners and staff members, including prisoners and staff members of USP Florence, for COVID-19, understanding that each day more people test positive who are asymptomatic;

- test BOP prisoners and staff members, including prisoners and staff members of USP Florence, who exhibit symptoms of COVID-19;

- isolate BOP prisoners, including prisoners of USP Florence, testing positive for COVID-19; and

- exclude BOP staff members, including staff members of USP Florence, testing positive for COVID-19 from contact with BOP prisoners.

Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with regard to Class members as a whole and certification of the Class under Rule 23(b)(2) proper.

## COUNT I
## DECLARATORY AND INJUNCTIVE RELIEF FOR DEPRIVATION OF EIGHTH AMENDMENT RIGHT TO BE FREE FROM CRUEL AND UNUSUAL PUNISHMENT BY RECEIVING ACCESS TO ADEQUATE MEDICAL CARE PURSUANT TO 28 U.S.C. §§ 1343, 2201 and 2202
(*Federal claim against Defendants Federal Bureau of Prisons and Warden J. Barnhart*)

65.

Plaintiff incorporates paragraphs 1 through 64 and all paragraphs this Court deems relevant to support this Count.

66.

Based on the incorporated paragraphs to support Count I, Defendants' acts and omissions in failing to provide adequate medical care—specifically the screening, testing, and isolation of prisoners testing positive for COVID-19 virus, as well as the failure to exclude staff members testing positive for COVID-19 from contact with BOP prisoners, including prisoners oat USP Florence—**constitute deliberate indifference to the serious medical needs of Nellson, and all members of the Class, thereby establishing a violation of the Eighth Amendment of the United States Constitution**. There simply is no doubt that based on the facts incorporated to support this Count, that these defendants know of and appreciate the serious risk of harm to the prison population, and simply have not taken reasonable steps to abate that harm.

67.

Defendants violated, and continues to violate, Nellson's and the entire class's Eighth Amendment rights by the deliberate enactment and enforcement of a policy not consistent with medical standards, which in effect, denied Nellson, and the entire class, from screening for COVID-19 and testing of both staff and prisoners demonstrating symptoms of the COVID-19 virus. Prisoners testing positive for COVID-19 should be isolated. BOP staff, including staff members of USP Florence, testing positive for COVID-19 should be excluded from contact with BOP prisoners, including prisoners at USP Florence. To a reasonable degree of medical certainty, the Defendants' acts and omissions, including its enforcement of the BOP's and USP Florence COVID-19 guidelines, if any, fell so substantially outside the standard of care and opposite reasonable medical judgment that they constituted a deliberate act of refusing Nellson and the entire class access to any medical care to prevent the spread of COVID-19—a deadly disease that can rapidly spread and advance to a deadly stage.

68.

To the extent that tests for the COVID-19 virus was not provided because of financial considerations, such concerns are in violation of the U.S. Constitution, as they deny necessary and adequate medical care to Nellson and other similarly

situated prisoners in violation of the Eighth Amendment to the United States Constitution.

69.

To the extent that prisoners showing symptoms of the COVID-19 virus and/or testing positive for COVID-19 were not isolated because of financial considerations, such concerns are in violation of the U.S. Constitution, as they deny necessary and adequate medical care to Nellson and other similarly situated BOP prisoners in violation of the Eighth Amendment to the United States Constitution.

70.

To the extent that Defendants' staff showing symptoms of the COVID-19 virus and/or testing positive for COVID-19 were not kept from BOP prisoners because of financial considerations, **such concerns are in violation of the U.S. Constitution, as they deny necessary and adequate medical care to Nellson** and other similarly situated BOP prisoners in violation of the Eighth Amendment to the United States Constitution.

71.

Consequently, Plaintiff is entitled to declaratory relief declaring the Defendants' actions in failing to screen, test BOP prisoners, including prisoners at

USP Florence, showing symptoms of COVID-19, and isolate BOP prisoners, including prisoners at USP Florence, who tested positive for COVID-19 virus is an unconstitutional deprivation of Plaintiff's rights to be free of cruel and unusual punishment and injunctive relief enjoining the Defendants from continuing its failure to isolate and test prisoners showing such symptoms.

72.

Similarly, Plaintiff is entitled to declaratory relief declaring the Defendants' actions in failing to screen, test BOP staff, including staff at USP Florence, showing symptoms of COVID-19, and exclude BOP staff who tested positive for the COVID-19 virus from contact with BOP prisoners, is an unconstitutional deprivation of Plaintiff's rights to be free of cruel and unusual punishment and injunctive relief enjoining Defendants from continuing its failure to isolate and test prisoners showing such symptoms.

## ATTORNEY FEES

**Based on the foregoing**, Plaintiff is entitled to reasonable attorney's fees under all applicable laws, including the Equal Access to Justice Act, 28 U.S.C. § 2412.

## PRAYER FOR RELIEF

**WHEREFORE**, Edward Nellson prays for a trial by jury of twelve and judgment against Defendants as follows:

(a) That process issue and service be had on each Defendant;

(b) That Plaintiff recover all costs of this litigation;

(c) That a jury trial be had on all issues so triable;

(d) That this Court certify a Class for the purposes of the permanent injunctive relief sought based on the proposed Class definition in this Complaint, subject to any modifications this Court deems proper for the adjudication of the rights alleged to be violated;

(e) That this Court issue an injunction and declaratory relief, requiring the BOP to immediately abandon its policy of inaction and begin screening prisoners and staff for symptoms of COVID-19, **by at the very minimal testing for fever daily**; and

(f) That this Court issue an injunction and declaratory relief, requiring the BOP to immediately abandon its policy of inaction and begin testing all prisoners for COVID-19; and

(g) That this Court issue an injunction and declaratory relief, requiring testing of prisoners and staff demonstrating symptoms of the COVID-19 virus, *to wit*, fevers, cough, and shortness of breath; and

(h) That this Court issue an injunction and declaratory relief, requiring isolation of BOP prisoners;

(i) That this Court issue an injunction and declaratory relief declaring that all BOP staff testing positive for COVID-19 be excluded from contact with BOP prisoners; and

(j) That this Court award attorney's fees under all applicable laws, including the Equal Access to Justice Act, § 28 U.S.C. 2412; and

(k) That Plaintiff receive such other and further relief as the Court deems just and proper.

Respectfully submitted this 18th day of March 2020,

/s/ MARIA-VITTORIA G. CARMINATI
Maria-Vittoria G. Carminati (Co #50579)

**NDH LLC**
4601 DTC Blvd., Suite 300
Denver, CO 80237
720-445-5655
mvcarminati@ndh-law.com

/s/ MARIO WILLIAMS
Mario B. Williams (Ga # 235254)

**NDH LLC**
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
404-254-0442 / 404-935-9391 FAX
mwilliams@ndh-law.com

/s/ ALEXANDRA PARROTT
Alexandra L. Parrott (CO # 54188)

**NDH LLC**
4601 DTC Blvd., Suite 300
Denver, CO 80237
720-445-5655
aparrott@ndh-law.com