IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 20-cv-00756-PAB

EDWARD NELLSON, individually, and on behalf of others similarly situated,

    Plaintiff,

v.

WARDEN J. BARNHART, in his individual and official capacity, and
UNITED STATES FEDERAL BUREAU OF PRISONS,

    Defendants.

_____

**ORDER**
_____

This matter is before the Court on plaintiff's Motion for Limited Discovery [Docket No. 26] and that portion of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction [Docket No. 10] seeking a preliminary injunction. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. BACKGROUND

Edward Nellson is an inmate at the United States Penitentiary in Florence, Colorado ("USP Florence"). Docket No. 10 at 1. He purports to represent a class of similarly situated inmates. Docket No. 1 at 1, 18. Plaintiff alleges that USP Florence is (1) not screening inmates or staff members for COVID-19, (2) not testing prisoners for COVID-19, (3) not isolating prisoners who test positive for COVID-19, and (4) not preventing infected staff members from working. Docket No. 10 at 1. Mr. Nellson filed a complaint on March 18, 2020, alleging that the failure to take the above steps violates

his rights, and those of the class, under the Eighth Amendment. See Docket No. 1. On March 31, 2020, Mr. Nellson filed a motion for temporary restraining order ("TRO") and preliminary injunction, requesting that the Court order USP Florence to begin instituting screening, testing, and isolation of both inmates and staff. Docket No. 10 at 1-2.

On April 16, 2020, the Court denied plaintiff's motion for a TRO. The Court concluded that plaintiff (1) had failed to exhaust administrative remedies, (2) had not shown the likelihood irreparable harm in the absence of a TRO, and (3) failed to show a likelihood of success on the merits. Docket No. 23 at 6-14.

On April 17, 2020, plaintiff filed a motion for limited and expedited discovery. Docket No. 26. Plaintiff requests the following:

a. all emails and documents, in native form, to, from, and between all USP Florence employees, and state, regional, and national BOP officials discussing COVID-19 at USP Florence specifically, including screening, testing, and any preventative measures for COVID-19 at USP Florence;

b. all emails and documents, in native form, to, from, and between all USP Florence employees, BOP employees, and the Government with third-parties, including protective gear purveyors, regarding COVID-19 at USP Florence specifically, including screening for, testing for, and obtaining protective gear to protect against COVID-19 at USP Florence;

c. all documents and emails evidencing the measures in place at USP Florence to screen for, test for, and implement preventative measures to protect against COVID-19;

d. all documents and emails evidencing the measures considered for, but not implemented at, USP Florence to screen for, test for, and prevent propagation of COVID-19;

e. all documents and emails evidencing the presence, if any, of COVID-19 at USP Florence among both its staff and prisoner

    population; and

 f. all publications on the Inmate Electronic Bulletin Board related to COVID-19.

*Id.* at 3.  Defendants filed a response to the motion for expedited discovery on April 21, 2020.  Docket No. 30.

In their response to the motion for TRO, defendants outline the steps that the Bureau of Prisons ("BOP") and USP Florence have taken to reduce the risk to inmates from COVID-19.  *See* Docket No. 17.[1]  These procedures are still in effect.  Docket No. 31-2 at 2-3, ¶ 3; *see also COVID-19 Action Plan: Phase Seven*, Fed. Bureau of Prisons (May 20, 2020, 4:00 PM), https://www.bop.gov/resources/news/20200520_covid-19 _phase_seven.jsp (stating that Phase Seven includes all previous precautions and will remain in place until June 30, 2020).  Defendants indicate that the BOP has adopted a multiphase "Action Plan."  Docket No. 17-1 at 4, ¶¶ 6-7.  On a nationwide basis, the BOP has

> implemented screening requirements for inmates and staff; temporarily suspended social visits, legal visits, inmate transfers, official travel, and contractor access; updated its quarantine and isolation procedures; and instituted a 'modified operations' plan, which directs BOP facilities to adjust their daily operations in a manner that permits inmates to engage in physical distancing while in common areas, such as during mealtimes and recreation.

Docket No. 17 at 2-3 (citing Docket No. 17-1 at 5-7, ¶¶ 8-15).  Additionally, on April 1, 2020, the BOP required "all inmates to remain 'secured in their assigned cells' . . . to

---

[1] The response attaches as Exhibit 1 the declaration of Shari Himlie, the Health Services Administrator for USP Florence and the three other federal prisons located in Florence Colorado.  *See* Docket No. 17-1.  Ms. Himlie oversees the health services operations at each of the Florence prisons.  *Id.* at 2-3, ¶ 1-4.

decrease the spread of the virus." *Id.* at 3 (citing Docket No. 17-1 at 7-8, ¶ 16). As a result, "BOP inmates across the country are currently being confined to their cells for the majority of each day." *Id.* (citing Docket No. 17-1 at 8-9, ¶ 17).

At USP Florence, the following measures have been taken regarding inmates: (1) new inmates are screened and quarantined for 14 days regardless of whether the inmate displays symptoms; (2) high-risk individuals, as defined by the Centers for Disease Control and Prevention ("CDC"), are screened, given temperature checks, and provided "additional education regarding COVID-19 prevention"; (3) medical staff check on general population housing units twice a day; (4) inmates with work details are screened for symptoms and have their temperatures taken before shifts begin and then again before returning to their housing units; (5) any inmate presenting COVID-19 symptoms is immediately evaluated to determine whether testing or isolation is appropriate and whether any other inmate who had contact with the symptomatic inmate should be quarantined; (6) designated quarantine and isolation units have been created; and (7) inmate testing is based on CDC guidance, looking to the nature and severity of symptoms, an inmate's potential exposure to COVID-19 and risk profile, and whether an inmate has a work detail that requires contact with other inmates or staff. Docket No. 17-1 at 13-16, 18, ¶¶ 33-50, 58.

Regarding staff and visitors, USP Florence has implemented the following measures: (1) all staff and visitors must have their temperature taken, disclose symptoms of illness, and answer questions designed to evaluate their risk of exposure before entering USP Florence; (2) any staff member or visitor who reports symptoms or

has a temperature of above 100.4 degrees Fahrenheit may be excluded from the building; and (3) any staff member who has been tested for COVID-19 is not permitted to return to work until he or she receives a negative test result. *Id.* at 16-17, ¶¶ 52-53, 55.

USP Florence has taken additional, staff-related steps by: (1) limiting the number of in-person meetings; (2) capping the number of attendees at in-person meetings; (3) replacing in-person meetings with video-conferencing to the extent practicable; and (4) requiring staff members to work at only one institution in the complex where USP Florence is located. *Id.* at 19-20, ¶¶ 65, 69

As to sanitation, USP Florence: (1) provides all inmates with access to sinks, water, and soap at all times; (2) offers new soap weekly; (3) gives all new inmates soap upon arrival; (4) provides soap at no cost to any inmate without sufficient funds to purchase it[2]; (5) cleans common areas at least once daily, "typically" multiple times a day, with a disinfectant that kills coronavirus; (6) provides inmates with the disinfectant so that they may clean their cells with it; (7) cleans common areas outside the living areas with the disinfectant on a daily basis and "often multiple times a day"; (8) disinfects staff common equipment, such as radios and keys, whenever an item is checked out or returned; (9) provides personal protective equipment, such as respirator masks, surgical masks, and rubber gloves, to staff in quarantined areas, isolation units, and screening sites; and (10) provides all inmates and staff protective masks for daily

---

[2] As discussed below, whether and how often inmates are provided soap is in dispute.

use.  *Id.*, ¶¶ 62-64, 67-68.

As of April 13, 2020, the BOP moved from Step Five to Step Six of their action plan.  Docket No. 31-2 at 3-4, ¶ 7.  Step Six maintains the above precautions, including requiring inmates to stay in their cells for the majority of the day, as well as the following: (1) meals and commissary items are delivered directly to inmates' cells; (2) inmates are permitted to leave their cells on a rotating basis for approximately two-and-a-half to three hours per day depending on the day; (3) inmates are directed to maintain physical distancing while outside of their cells; (4) inmates are not required to leave their cells and are permitted to remain in their cells if they choose; (5) telephone calls are free during the COVID-19 emergency; (6) work detail screening is conducted at the Health Services Department of USP Florence; (7) USP Florence staff are required to wear face masks when in common areas when appropriate social distancing is impossible; (8) USP Florence staff are required to keep a face mask on their person at all times; (9) staff working in isolation or quarantine housing are required to wear PPE; and (10) inmates are required to wear face masks except "when necessary for identification, when the individual is unable to personally remove the mask, or the individual has chronic conditions associated with difficulty breathing."  *Id.* at 3-4, 6-8 ¶ 7, 8 & n.2, 13, 19, 22.  On May 18, 2020, the BOP moved to Phase Seven, which extends all of the previous precautions until June 30, 2020.  *COVID-19 Action Plan: Phase Seven*, Fed. Bureau of Prisons (May 20, 2020, 4:00 PM), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp.

As of the date of this order, the BOP website shows no reported COVID-19

cases among prisoners or staff at USP Florence.  *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last updated June 4, 2020).

## II. LEGAL STANDARD

### A. Expedited Discovery

A party seeking expedited discovery has the burden of showing good cause for the requested departure from usual discovery procedures.  *Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D. Colo. 2003); *see also* Fed. R. Civ. P. 26(b).  Expedited discovery has been granted in cases where discovery of certain facts is "unusually difficult or impossible."  *See Pod-Ners, LLC v. N. Feed & Bean of Lucerne Ltd. Liability Co.*, 204 F.R.D. 675, 676 (D. Colo. 2002).

### B. Preliminary Injunction

To succeed on a motion for a preliminary injunction, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the movant's favor; and (4) the injunction is in the public interest.  *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 US. 7, 20 (2008)).  "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quotations and citation omitted).  Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe v. Enter. Mgmt. Consultants, Inc.,* 883 F.2d 886, 888-89 (10th Cir. 1989), is the "exception rather

than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).

There are three types of preliminary injunctions that are disfavored: (1) injunctions that disturb the status quo, (2) injunctions that are mandatory rather than prohibitory, and (3) injunctions that provide the movant substantially all the relief it could feasibly attain after a full trial on the merits. *See Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1260 (10th Cir. 2005). In seeking a disfavored injunction, "the movant must make a strong showing both with regard to the likelihood of success on the merits and with regard to the balance of harms." *Fish v. Kobach*, 840 F.3d 710, 724 (10th Cir. 2016) (quotations and alterations omitted); *see also Schrier*, 427 F.3d at 1259 (stating that such injunctions "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course" (quotations omitted)).

Plaintiff here seeks an injunction that alters the status quo. Therefore, plaintiff's motion falls under the heightened standard for preliminary injunctions. *See Schrier*, 427 F.3d at 1260.

### III. ANALYSIS

#### A. Expedited Discovery

Plaintiff's discovery requests are broad and numerous. Plaintiff's motion for preliminary injunction deals solely with screening, testing, and isolation procedures currently in place at USP Florence. Docket No. 10 at 1. Yet, plaintiff requests discovery on communications between state, regional, and national BOP officials on the BOP's response to COVID-19 at USP Florence. Docket No. 26 at 3, ¶ 7. Plaintiff

also requests discovery on communications between the BOP, the "government," and third-party medical equipment providers. *Id.*, ¶ 7b. Additionally, plaintiff seeks discovery on the decisionmaking process as to which measures USP Florence chose to implement. *Id.*, ¶ 7d. While the facts underlying these various requests may be "unusually difficult or impossible" to obtain without discovery, they are also irrelevant to the preliminary matter before the Court. See *Pod-Ners*, 204 F.R.D. at 676. What decisions the BOP could have taken is irrelevant to whether defendants should be required to screen, test, and isolate staff and inmates, or whether defendants are already implementing those measures.

Additionally, there are no material factual disputes on which discovery would prove useful. Plaintiff claims – and the Court assumes as true – that inmates at USP Florence "have no guaranteed access to either soap or hand sanitizer at USP Florence." Docket No. 35 at 5. Plaintiff further alleges that USP Florence is not "systematically testing the prisoners' temperatures and are only allegedly testing their employees' temperatures upon entering the facilities." *Id.* at 6. Finally, plaintiff claims, and defendants confirm, that inmates are only permitted to wash their laundry once a week. *Id.* Even if this is all true, it is not material to the requested relief. First, whether or how often inmate's are provided soap and clean laundry is unrelated to plaintiff's requested relief of screening, isolation, and testing. Second, while systematic testing of inmates' temperatures does relate to plaintiff's requested relief, defendants never claimed to be systematically testing prisoners' temperatures, and, as will be discussed below, this lack of systematic testing does not demonstrate that defendants are

disregarding a substantial risk to inmate safety.

As a result, the Court finds that there is not good cause for expedited discovery and plaintiff's motion for expedited discovery will be denied.

### B. Preliminary Injunction

#### 1. *Evidentiary Hearing and Exhaustion of Administrative Remedies*

Before reaching the merits of plaintiff's motion, the Court address two preliminary matters: (a) the Court's decision to forgo an evidentiary hearing and (b) exhaustion under the Prison Litigation Reform Act ("PLRA").[3]

#### a. Preliminary Injunction Hearing

Federal Rule of Civil Procedure 65(a) does not explicitly require a hearing before a court may rule on a motion for preliminary injunction. Fed. R. Civ. P. 65(a). Additionally, the Tenth Circuit does not require a court to hold such a hearing where one is unnecessary. *See Carbajal v. Warner*, 561 F. App'x 759, 764 (10th Cir. 2014) ("[Plaintiff] fails to show any error in the district court's denial of injunctive relief, and he asserts no independent ground for why a hearing was appropriate."); *Reynolds and Reynolds Co. v. Eaves*, 149 F.3d 1191, 1998 WL 339465, at *3 (10th Cir. 1998) (unpublished table decision) ("[Plaintiff] has failed to cite any Tenth Circuit authority

---

[3] The Court need not resolve the issue of certifying plaintiff's putative class. First, plaintiff has not moved to certify the class. Second, it is not necessary to resolve class certification before issuing preliminary injunctive relief. *See Fish v. Kobach*, 189 F. Supp. 3d 1107, 1148 (D. Kan. 2016) ("[C]ase law supports this Court's authority to issue classwide injunctive relief based on its general equity powers before deciding the class certification motion."); *see also Newberg on Class Actions* § 4:30 (5th ed. Dec. 2019 update) ("[A] court may issue a preliminary injunction in class suits prior to a ruling on the merits.").

that requires a district court to hold an evidentiary hearing prior to granting or denying a preliminary injunction motion . . . [and] we do not instruct the district court to hold an evidentiary hearing prior to disposition of [plaintiff's] motion, although the district court is free to do so within its own discretion." (citation omitted)).

District courts in the Tenth Circuit have declined to hold evidentiary hearings when there are no disputed material facts or where a plaintiff cannot supply sufficient evidence to justify granting the preliminary injunction. *See Fenzi v. City of Las Vegas*, 2016 WL 10587987, at *1 (D.N.M. Mar. 16, 2016); *Park v. Zavaras*, No. 08-cv-00737-MSK-KLM, 2010 WL 6389329, at *1 (D. Colo. Apr. 19, 2010); *see also Monroe Div., Litton Bus. Sys., Inc. v. De Bari*, 562 F.2d 30, 33 (10th Cir. 1977) (holding that a defendant was entitled to a hearing where there are genuine issues of material fact).

The sole factual dispute is the extent to which inmates at USP Florence are provided soap. Resolution of this dispute is not necessary to rule on the motion for preliminary injunction. Additionally, given the undisputed procedures that defendants have instituted, plaintiff would be unable to provide sufficient evidence to justify preliminary relief. As a result, the Court declines to hold an evidentiary hearing.

### b. Exhaustion under the PLRA

As addressed in the order denying the TRO, plaintiff is required to exhaust his administrative remedies before seeking judicial relief, including any available emergency administrative procedures. Docket No. 23 at 6-10. On April 17, 2020, plaintiff filed a request for informal resolution of the issues he has presented in his motion for a TRO and preliminary injunction. Docket No. 31-3 at 3, ¶ 4. That day, he

was provided with a BP-8 form for formal resolution. *Id.* Again on the same day, his correctional counsel responded outlining the steps taken at USP Florence. *Id.* On April 20, 2020, plaintiff began the next step in the process by completing a BP-9, requesting the same relief found in his motion. *Id.*, ¶ 5. On April 21, 2020, Warden Barnhart responded to plaintiff's request, outlining the steps already taken at USP Florence and informing plaintiff that, if a positive case occurs at USP Florence, all inmates will be screened daily with temperature and symptom checks. *Id.* at 3-4, ¶ 6. Warden Barnhart informed plaintiff that he could appeal his decision to the Regional Director. *Id.*

Even assuming that plaintiff has appealed to the Regional Director and has thus completed the administrative grievance process, plaintiff would not be entitled to relief. As discussed below, plaintiff has failed to demonstrate that he is likely to suffer irreparable harm in the absence of an injunction or that he has a likelihood of success on the merits.

### 2. Irreparable Harm

As the Court held in its order on plaintiff's TRO, defendants have already implemented the relief that plaintiff requests.[4] As a result, plaintiff cannot show "that irreparable injury is *likely* in the absence of an injunction," *Winter*, 555 U.S. at 22. Plaintiff requests the following relief: (1) screening of prisoners and staff for symptoms of COVID-19; (2) testing of prisoners and staff demonstrating symptoms of COVID-19;

---

[4] In resolving the merits of plaintiff's motion, the Court considers the declarations submitted with plaintiff's Motion for Leave to Supplement Motion for Preliminary Injunction [Docket No. 43].

(3) quarantining of inmates testing positive for COVID-19; and (4) preventing staff testing positive for COVID-19 from contact with inmates.  Docket No. 10 at 1-2.

First, as to screening, all new inmates and high-risk inmates at USP Florence are screened for symptoms of COVID-19.  Docket No. 17-1 at 13-14, ¶¶ 33-35, 41.  Medical staff checks on general population inmates twice daily to ensure that general population inmates are not exhibiting symptoms.  *Id.* at 15, ¶ 46.  Additionally, inmates with a work detail are screened and have their temperatures taken each time they begin and end their work detail.  *Id.*, ¶ 45.  Work detail screening is conducted away from other inmates at the Health Services Department of USP Florence.  Docket No. 31-2 at 6, ¶ 13.  Staff are also screened for symptoms and are required to have their temperatures taken.  Docket No. 17-1 at 16-17, ¶ 52.

Second, as to testing, USP Florence tests inmates in accordance with CDC protocols.  *Id.* at 17-18, ¶¶ 56-58.  This includes analyzing an inmate's exposure risk profile and determining whether an inmate has had potential exposure to COVID-19 or is exhibiting symptoms.  *Id.* at 18, ¶ 58.

Third, as to quarantine, the BOP has instituted a stay in place order, requiring all prisoners to limit movement as much as practicable.  *Id.* at 7-8, ¶ 16.  USP Florence has set up special units for isolation and quarantine.  *Id.* at 16, ¶¶ 48-51.  USP Florence also considers quarantining individuals who have had contact with those exhibiting symptoms of COVID-19, even if those individuals do not exhibit symptoms themselves.  *Id.*

Fourth, as to exclusion of staff, any staff members exhibiting symptoms or

measuring a fever of 100.4 degrees Fahrenheit or above may be excluded, regardless of whether they have tested positive for COVID-19. *Id.* at 16-17, ¶¶ 52-54. Any staff member who has been tested is not allowed to return to work until that staff member tests negative. *Id.* at 17, ¶ 55.

Because defendants have instituted all the relief that plaintiff requests, the Court finds that plaintiff will not suffer likely irreparable harm if the Court denies plaintiff's request for a preliminary injunction. *Winter*, 555 U.S. at 22. Granting an injunction would not require defendants to change their behavior. As a result, the lack of an injunction is not likely to harm plaintiff.[5]

Without a showing on irreparable harm, plaintiff cannot succeed on his motion for preliminary injunction. *See Winter*, 555 U.S. at 23-24 (holding that "[a] proper consideration" of the balance of equities and public interest "alone requires denial of the requested injunctive relief" and, therefore, declining to address the likelihood of success on the merits); *see also Big O Tires, LLC v. Felix Bros., Inc.* 724 F. Supp. 2d 1107, 1121 (D. Colo. 2010) (declining to address every factor because "the resolution

---

[5] Plaintiff argues that defendants are not systematically testing staff members for COVID-19 or systematically checking inmates' temperatures. Docket No. 35 at 6. Although plaintiff requested systematic temperature checks in his complaint, plaintiff did not request systematic testing in his motion for preliminary injunction. Plaintiff does not contest that defendants are screening and testing prisoners who exhibit symptoms of COVID-19 in accordance with CDC protocols. Plaintiff cannot expand his requested relief through his reply brief. *Novosteel SA v. U.S. Bethlehem Steel Corp.*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("[R]eply briefs reply to arguments made in the response brief – they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration."). Moreover, defendants state that they will systematically check inmates' temperatures as soon as there is a positive case at USP Florence. Docket No. 31-3 at 3-4, ¶ 6.

of them will have no bearing on the outcome").

### 3. Likelihood of Success on the Merits

Plaintiff argues that, for defendants' measures to be effective, they must be implemented. Docket No. 35 at 5-6. Specifically, plaintiff alleges that (1) inmates do not have guaranteed access to soap, (2) defendants are not systematically testing inmates' temperatures, (3) defendants are only taking employees' temperatures when they enter USP Florence, and (4) defendants are not testing staff for COVID-19 when they enter the building. *Id.* Assuming that these allegations are true, they still do not show that defendants are deliberately indifferent and, as a result, plaintiff has not made a strong showing of a likelihood of success on the merits.

In the complaint, plaintiff brings a single claim under the Eighth Amendment that defendants are deliberately indifferent to plaintiff's serious medical needs. Docket No. 1 at 25. A claim for deliberate indifference to serious medical needs has an objective and a subjective component. The objective component requires that the medical need be "sufficiently serious." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The subjective component requires that "a prison official knows of and disregards an excessive risk to inmate health or safety." *Id.* (citation and quotations omitted). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they respond[] reasonably to the risk." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

Plaintiff argues that both the objective and subjective component are met. As to the objective component, plaintiff argues that communicable diseases can be

sufficiently serious to meet the objective prong and that there need not be an existing threat of harm; a sufficiently serious potential harm may satisfy the objective prong. Docket No. 10 at 12-13. Regarding the subjective component, plaintiff first argues that the BOP knows of the substantial risk to inmate health or safety given the steps the BOP has taken to combat COVID-19. *Id.* at 14-15. In plaintiff's motion, plaintiff claims that the BOP does not have any response of its own and is taking a "wait and see" approach and thus is disregarding substantial risk to inmate health or safety. *Id.* at 16-17. However, in reply, after receiving information regarding the steps taken at USP Florence, plaintiff argues that (1) inmates are not receiving systematic temperature checks, (2) staff members are not being tested for COVID-19 upon entrance to USP Florence, and (3) inmates do not have guaranteed access to soap or hand sanitizer, and thus, the lack of these measures demonstrate that defendants are disregarding a substantial risk to inmate health or safety. Docket No. 35 at 5-6.

The Court assumes that the objective component is met and that defendants are aware of the risk of COVID-19. Thus, plaintiff must demonstrate that defendants are disregarding that risk. As outlined above, defendants are: (1) screening and testing staff and inmates in accordance with CDC protocols; (2) separately accounting for and screening high-risk individuals; and (3) checking on general population inmates twice daily to ensure that they are not exhibiting symptoms. Docket No. 17-1 at 13-18, ¶¶ 33-50, 52-53, 55, 58. While defendants may not be testing every staff member for COVID-19 when he or she enters USP Florence or systematically checking every inmate's temperature, defendants are complying with CDC protocols. Compliance with

16

CDC protocols does not demonstrate that defendants are disregarding a substantial risk to inmate health or failing to respond reasonably to the risks of COVID-19.

The one factual dispute pertains to whether and when inmates are provided soap at no cost. Docket No. 35 at 3. Plaintiff claims that it is difficult to receive soap and that defendants are not providing soap to inmates unless they have no money in their account. Docket No. 35-1 at 1-2, ¶ 5; *see also* Docket No. 35-2 at 2, ¶¶ 8-9. Some inmates were spending their commissary money on things other than soap and then asking the BOP to provide their soap. Docket No. 35-1 at 1-2, ¶ 5; Docket No. 35-2 at 2, ¶¶ 6-9. In response, USP Florence has limited commissary purchases to hygiene products. Docket No. 35-2 at 2, ¶ 6. Defendants state that inmates who cannot afford soap are able to obtain it.[6] Docket No. 17-1 at 19, ¶ 62. Plaintiff has previously purchased soap. Docket No. 31-3 at 3-4, ¶ 6. This factual dispute alone does not demonstrate that defendants are failing to respond reasonably to the risks of COVID-19.[7]

Plaintiff argues that the situation and procedures in place at USP Florence may have changed since plaintiff's last filing. Docket No. 42 at 1, ¶ 4. However, the BOP website states that Phase Seven includes all of the previous precautions through June 30, 2020. *COVID-19 Action Plan: Phase Seven*, Fed. Bureau of Prisons (May 20,

---

[6] Hand sanitzer is not available due to it containing alcohol. Docket No. 31-3 at 3-4, ¶ 6.

[7] Even if it did, it is unclear how that conclusion would help plaintiff, as he requests screening, testing, and isolation of inmates and staff, all procedures already in place at USP Florence.

2020, 4:00 PM), https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp. Additionally, there continues to be no COVID-19 cases among inmates or staff at USP Florence. *See COVID-19 Coronavirus*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last updated June 4, 2020). While plaintiff argues that the situation may have changed, there is no evidence before the Court demonstrating that there have been any changes to the BOP's response, other than to extend the length of the procedures in place at USP Florence. The declarations submitted with plaintiff's motion to supplement corroborate that the procedures are still in place, including the stay in place order. *See* Docket No. 43-1 at 3 ("21 hours a day cell mates are within five or six feet of each other."); Docket No. 43-2 at 3 ("I have a cell mate, for 21 hours a day we are within 5 feet of each other."). Plaintiff has failed to submit any evidence that the situation at USP Florence has changed or that any changes would support his motion.

The Court finds that, taken together, defendants' procedures demonstrate that defendants have reasonably responded to the risks of COVID-19 and have not disregarded a substantial risk to inmate health. As a result, plaintiff has not made a strong showing on the likelihood of success on the merits.

## IV. CONCLUSION

For the foregoing reasons it is

**ORDERED** that plaintiff's Opposed Motion for Status Conference [Docket No. 42] is **DENIED**. It is further

**ORDERED** that plaintiff's Motion for Leave to Supplement Motion for Preliminary Injunction [Docket No. 43] is **GRANTED**. It is further

**ORDERED** that plaintiff's Motion for Limited Discovery [Docket No. 26] is **DENIED**.  It is further

**ORDERED** that the portion of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction [Docket No. 10] that seeks a preliminary injunction is **DENIED**.

DATED June 4, 2020.

BY THE COURT:

_____
PHILIP A. BRIMMER
Chief United States District Judge